**IN THE COURT OF APPEALS OF IOWA**

No. 24-1632
Filed January 23, 2025

**IN THE INTEREST OF E.B.-R.,**
**Minor Child,**

**N.W., Father,**
        **Appellant,**

**B.W., Mother,**
        **Appellant.**
_____

Appeal from the Iowa District Court for Scott County, Korie Talkington, Judge.

A mother and father separately appeal a juvenile court order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

G. Brian Weiler, Davenport, for appellant father.

Jennifer Triner Olsen, Davenport, for appellant mother.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

Brian Patrick Donnelly, Clinton, attorney and guardian ad litem for minor child.

Considered by Schumacher, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

The Iowa Department of Health and Human Services has been involved with this family since February 2022, when the child was just one year old. After more than two years of reunification services, the juvenile court terminated the parents' rights under Iowa Code section 232.116(1)(e) and (h) (2024), finding the "child is in need of permanency and should not have to wait any longer." We agree and affirm on both parents' appeals.

## I.      Background Facts and Proceedings

The parents' child,[1] who was born in November 2020, has seen little consistency in his short life. In early 2022, law enforcement executed a search warrant at the mother's home and found methamphetamine in her bedroom. The State petitioned to have the child adjudicated as a child in need of assistance in March. Although the mother was uncooperative with the department, the child remained in her custody until May, when the mother brought the child and his then thirteen-year-old sister to a house where people were using drugs. While they were there, a shooting took place. Under a safety plan with the mother, the two children were moved to their maternal great-grandmother's home. They stayed there until August, after their father tested negative for drugs. The parents stipulated to the children's adjudication, and a September dispositional order placed them in the father's custody under the department's supervision.

---

[1] The parents are married and share two children together—the child involved in this appeal and a daughter, born in 2009. The mother also has an older child, born in 2005, from a different relationship. The permanency plan for the middle child was a guardianship, and the oldest child turned eighteen in 2023, so neither are involved here.

But in January 2023, the children were removed from the father's custody after he was arrested for five felonies, including third-degree burglary and first-degree theft. Before his arrest, the father had been avoiding drug testing for the department and acting erratically. The children were placed with the same foster family until May, when that family notified the department that they could no longer care for the children. Since then, the child at issue in this case has been placed apart from his older sister, moving to three homes before finding one where he "blossomed," according to the department's case manager. The child has been settled in that home for more than one year. Meanwhile, his parents have remained unsettled.

The mother was in and out of jail for most of these proceedings. In between her incarcerations, she was discharged from two outpatient substance-use treatment programs in 2023. Although she completed a twenty-one-day inpatient treatment program in December, the mother did not comply with drug testing, attending just four of the nineteen tests that were offered. She also missed several visits with the child, who struggled behaviorally after seeing her. And the mother was sporadically employed, with no stable housing.

The father remained in jail until July 2023, when he pled guilty to first-degree theft and received a suspended sentence with five years of probation. He started visits with the children almost immediately after his release and secured housing, employment, and a substance-use evaluation. But his first drug test after his release was positive for methamphetamine, and he missed multiple tests after that. Yet after a permanency hearing in October, the juvenile court granted the parents a short extension "to work toward reunification," requiring them to "comply with all

requests for drug testing," follow recommendations for substance-use and mental-health treatment, and otherwise establish stability.

By the end of December, the court found the father had

> completely failed to comply with the court's order. He failed to attend the scheduled drug tests. He claims that on one occasion he was in the middle of a work project that he could not leave, and that he did not receive the second notification. It is time for him to quit playing games. The court order was clear. If he wants to demonstrate his sobriety then he must comply.

Because of the parents' lack of progress, the court changed the permanency goal for the child to termination of parental rights.

The father tested positive for methamphetamine twice after that order, once in January 2024 and again in February, although he denied use. At the beginning of February, the State petitioned to terminate the parents' rights. The mother was arrested for possession of methamphetamine, among other charges, in April. She was still in jail when the termination hearing began the next month. The father's circumstances, however, had improved. He had maintained housing since the beginning of the year and was working as a self-employed contractor. The father attended nearly every visit offered to him, missing just one in the eight months before the hearing. And his visits with the child went well. But the father's compliance with drug testing remained poor. Although he had a negative urinalysis in February and a negative sweat patch in April, the father missed tests in March and May. The case manager testified, "he's choosing which tests to attend and which ones not to, so I don't have consistent drug test results that are negative."

At the second day of the termination hearing in June, the father was wearing another sweat patch. The department had not received the results from that test

because the father had interfered with the removal of the patch by trying to take pictures of the process. The court denied the father's request to keep the record open for the test results, reasoning:

> Your motion assumes he's going to show up, number one. It assumes he will be tested timely. I have no idea how long I'll be waiting, and that delays my decision, which delays permanency for these children. . . . If it happens to be there before I hit file, I will consider it, and if not, I'm not going to wait.

Less than two weeks after the hearing, the State moved to reopen the record to submit additional evidence about the results of that sweat patch. The court granted that motion and set a hearing. But at the hearing in September, the State withdrew its motion, and the parties agreed the court should "not consider any docket entries filed after June 10, 2024."

On that evidence, the juvenile court terminated both parents' rights under Iowa Code section 232.116(1)(e) and (h). The mother and father separately appeal.

## II.      Standard of Review

We review terminations of parental rights de novo, using a three-step analysis that asks whether (1) a statutory ground for termination is satisfied, (2) the child's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3). Our review is confined to the steps raised by each parent on appeal. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

## III. Analysis

The mother's petition on appeal contains one issue: "The Juvenile Court erred in finding clear and convincing evidence that it was in the child's best interest to terminate parental rights . . . ." Under that issue heading, she challenges each of the three steps involved in our analysis. But she does so on the father's behalf, arguing "there was no clear and convincing evidence that the children could not be returned safely to [the father]"; the "father was having significant and meaningful contact with the child"; and termination "is not in the best interest of the child herein in that he is so very bonded to his father and he has complied with the services offered to him." Because the mother lacks standing to assert arguments on the father's behalf, we do not consider those arguments and summarily affirm the termination of her parental rights. *See In re C.T.*, No. 18-2199, 2019 WL 1055897, at *1 n.1 (Iowa Ct. App. Mar. 6, 2019) (collecting cases where we "rejected challenges to termination of one parent's rights based solely on the assertion that the child could or should be returned to the other parent").

Turning to the father's appeal, he only challenges the sufficiency of the evidence supporting the statutory grounds for termination. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We find termination of the father's parental rights was proper under section 232.116(1)(h).

The father contests the fourth element of that ground, which requires clear and convincing evidence "that the child cannot be returned to the custody of the child's parent[] . . . at the present time." Iowa Code § 232.116(1)(h)(4); *In re D.W.*,

791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). The juvenile court found that element had been met, ruling the father

> has never addressed his substance use. He missed many more tests tha[n] he attended. The court lectured him about the importance of attending testing in January, but he continued to routinely miss. Only [the father] knows whether he is sober. That is because [he] has not taken advantage of the chances he has been given to provide samples for testing. As stated by [the case manager], when tests are missed, they are presumed to be positive.

We agree that the father is not entitled to the benefit of the doubt with respect to tests he declined to submit. *See In re R.A.*, No. 21-0746, 2021 WL 4891011, at *1 (Iowa Ct. App. Oct. 20, 2021) ("We presume these missed tests would have been positive for illegal substances.").

The father argues that his "job sometimes interfered with request[s] to drug test." But he was self-employed, and the case manager testified that she "tried to work with his work schedule and schedule them in the evening." The father also argues that he complied with all case plan expectations, pointing out that he obtained substance-use and mental-health evaluations, maintained stable housing and employment, and complied with his probation requirements. Those efforts, however, do not outweigh the concerns for the father's sobriety. As the case manager explained: "Regardless of . . . how he believes those tests were positive, they were positive, and he has not demonstrated honesty in his substance use and has not demonstrated long-term sobriety."

"We cannot turn a blind eye to the [father's] history of use." *In re E.H.*, No. 21-0467, 2021 WL 2709486, at *2 (Iowa Ct. App. June 30, 2021). The father refused to acknowledge that history, instead blaming his three positive tests over

several months on the specter of contamination at the testing center.  But the father presented no evidence of contamination, and we do not find his account credible. As the case manager testified, "If it was a space that was contaminated, . . . everybody would be testing positive.  There are precautions."  Since the father refused to admit that he used methamphetamine, he never received any treatment. This leads us to fear that his use is likely to continue.  *See id.*  Because a "parent's methamphetamine use, in itself, creates a dangerous environment," we find sufficient evidence that the child could not safely be returned to the father's care. *In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020).

For these reasons, we affirm the termination of the parents' rights to their child.

**AFFIRMED ON BOTH APPEALS.**